

RECEIVED
HON. Brian M. C...
JUN 1 7 2010

June 14, 2010

*Via U.S. Mail*

Hon. Brian M. Cogan
United States District Judge
U.S. District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *U.S. v. Hu*, 2:08 CR 425

Dear Judge Cogan:

This letter is written on behalf of Sanrio Company, Ltd. and its wholly owned U.S. subsidiary Sanrio, Inc. (collectively, "Sanrio"). As the President and Chief Executive Officer of Sanrio, Inc., I am writing to ask the Court to impose strict prison terms and high fines for Lin Hu, Jian Hu, and Hoy Mui Cheow, the defendants in this criminal counterfeiting action.

Sanrio is the creator and owner of HELLO KITTY, one of the most famous and beloved children's cartoon characters in the world. Sanrio makes, and licenses others to make, a wide range of consumer products for use by children and young adults, including stationery items, toys, clothing, household items, cosmetics, jewelry, and electronics. For 35 years, these products have featured HELLO KITTY, as well as many other well known children's characters. *See generally*, www.sanrio.com.

We understand that the defendants in this case have pled guilty to trafficking in huge volumes of counterfeit goods (over 25 container loads annually for several years), including counterfeit HELLO KITTY merchandise such as electric lights, hand-held scented

battery-operated fans, plastic and vinyl backpacks, cell phone covers with metal clips, notebooks with glued-on glitter, slippers, stickers, handbags, and face cloths. For the following reasons, we ask the Court to recognize the serious harm that these defendants have caused not only to Sanrio, but to consumers. By imposing the strictest prison terms and fines, the Court can provide a powerful and much needed deterrent to other counterfeiters.

The success of Sanrio's entire business stems from the value to its customers, primarily children and young people, but also many U.S. celebrities, of owning merchandise featuring HELLO KITTY and Sanrio's other signature characters. Sanrio spends close to $2 million annually in the U.S. to promote its HELLO KITTY character products. Retail sales in the U.S. total over $500 million annually.

As with other famous brands, the popularity of Sanrio's character merchandise has given rise to widespread counterfeiting. We estimate that at least two million such counterfeits are sold in the U.S. each year. A single importer can maintain an inventory of over 100,000 units of counterfeits bearing Sanrio's characters, in addition to counterfeits of many other companies' goods.

Counterfeits featuring Sanrio's HELLO KITTY (and other characters) are consistently of very poor quality, if not outright dangerous. The proliferation in the United States of such poor quality merchandise bearing Sanrio's famous HELLO KITTY brand threatens Sanrio's valuable reputation and good will. Sanrio spends hundreds of thousands of dollars annually to investigate and prosecute the constant influx of counterfeit Sanrio goods into the U.S.

As one example, we are currently prosecuting a network of dozens of related U.S. individuals and business entities, who routinely imported counterfeit Sanrio products and sold them in various small retail stores, with changing names, owners and locations, for several years. Those defendants were selling counterfeit HELLO KITTY jewelry which we have also seen offered for sale by numerous other entities. We had some samples of the counterfeit jewelry tested, and discovered that they contain extremely dangerous levels of lead: from 800 to over

800,000 parts per million, where the maximum allowable under California law is 300 parts per million. Such levels were found not only in the obviously metal components, but in the paint, glue, and glass components of the jewelry. Other common dangerous HELLO KITTY counterfeits include electronics, such as lights and hand-held fans, which typically do not meet U.S. safety standards. Metal parts, glues, plastics, and other materials used to make counterfeit items like backpacks, cell phone covers, and cell phone charms, can also be toxic.

Typically, U.S. counterfeiters, like the defendants in this case, import the counterfeits from manufacturers or vendors in China or South Korea. Counterfeits from both countries, especially children's products, are notoriously unsafe. As I'm sure the Court is aware, there have been numerous recalls of counterfeits from these countries in recent years.

We learn about the importation and sales of the counterfeits when U.S. Customs occasionally inspects and detains a shipment (based on our Sanrio's recorded U.S. copyright and trademark registrations), or we discover the counterfeits being sold in U.S. retail outlets and online, or when other famous brand owners alert us to such activities. Through Sanrio's intellectual property counsel, we send cease and desist letters and DMCA notices regarding such sales of the counterfeits.

However, the business names of the exporters and importers are constantly in flux. The infringers frequently move and/or change their names and URLs, and then continue their infringing activities.

These deceptive practices make it very difficult for Sanrio to intercept and stop even the trafficking in counterfeits that we know about. Moreover, as this case demonstrates, much trafficking in counterfeits occurs, often for many years, without detection by U.S. Customs or Sanrio's private efforts. Like the defendants in this case, counterfeiters often maintain a sham front showroom featuring authentic goods, with a hidden back showroom for their counterfeits. They constantly change their names and locations.

Counterfeiters are not significantly deterred by the relatively remote possibility that their counterfeits will be seized by U.S. Customs, or that Sanrio will be able to stop their counterfeiting through civil lawsuits. Counterfeiters know that the chances of such adverse consequences remain small. They believe that the profits they can reap from continuing to import and sell their poor quality counterfeits outweigh the small likelihood that they will face significant legal liability for doing so.

Accordingly, Sanrio believes it is very important that high-volume counterfeiters like the defendants in this action are criminally prosecuted, and that when the counterfeiters are found guilty, they are given strict prison sentences and high fines. Otherwise, all counterfeiters will learn that even if they are caught and criminally prosecuted, they will not suffer significant consequences, and they will not be deterred. Counterfeiters need to believe that they are at risk for severe penalties or they will not stop their profitable counterfeiting activities.

Many counterfeits, including those involved in this case, are dangerous to consumers. Counterfeit Sanrio goods pose a particular risk to children. There is a considerable danger that counterfeit Sanrio goods are made with toxic materials, parts that may present choking hazards, and other dangerous features.

Accordingly, Sanrio respectfully requests this Court impose on these defendants the strictest prison sentences and fines allowed by law.

Thank you for your consideration.

Sincerely,

SANRIO COMPANY, LTD. AND SANRIO, INC.

By _/s/ Katsumi Murakami_
Katsumi Murakami

cc:     Noel M. Cook, Esq.
        Linda Joy Kattwinkel, Esq.
        Owen, Wickersham & Erickson, P.C.

HU criminal case lt sentencing j