

LEGAL DEPARTMENT

May 24, 2010



Honorable Judge Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: USA vs. Hu, 2:08 CR 425, United States District Court, Eastern District of New York**

Dear Judge Cogan:

I am Director, US Trademark Enforcement of Polo Ralph Lauren Corporation, parent company to PRL USA Holdings, Inc. ("PRL" or the "Company"). I respectfully submit this statement on behalf of PRL to advise you and the Court of the impact that the criminal activities of Lin Hu, Jian Hu and Hoy Mui Cheow (the "Defendants") has had on PRL, and to request that the Defendant be required to make monetary restitution to PRL as part of any sentence that the Court may impose.

PRL is a famous, premiere lifestyle brand known throughout the world. For 40 years, PRL's reputation and distinctive image have been consistently developed across an expanding number of products, brands and international markets. All of which are manufactured, licensed, distributed and sold by authorized vendors. PRL's trademarks, including, POLO, POLO RALPH LAUREN, POLO by RALPH LAUREN and [logo] ("PRL Trademarks" or the "PRL Brand") constitute one of the world's most widely recognized families of consumer brands. The PRL Trademarks are registered throughout the World, including in the United States where many of its registrations have become incontestable.

The PRL Brand is consistently recognized by leading publications, including WWD, DNR and Forbes, as being one of the most recognized and well-known apparel brands in the world. Ralph Lauren, PRL's founder/designer Chairman and CEO, has received multiple awards (together with several CFDA awards including the Lifetime Achievement Award in 1992, the Legend Award in 2007 and the Popular Vote Award in 2009) recognizing his effect in the fashion and business world. Just last month, Mr. Lauren received the Insignia of Knight of the Legion of Honor by the President of the Republic of France Nicolas Sarkozy. PRL considers its intellectual property to be among its most valuable assets and devotes significant resources to ensure that its rights are not infringed.

It is our understanding that the Defendant facilitated in the sale and distribution of at least 720 PRL counterfeit items. By importing, selling and distributing inferior products that fraudulently bear PRL's trademarks, people such as the Defendant, undermine and

significantly damage PRL's reputation, its goodwill and the demand for its products. This is not to say that everyone who knowingly purchases a counterfeit PRL product would have otherwise bought genuine merchandise if the counterfeit was not available. Although PRL undoubtedly loses some sales in this manner, far greater economic harm comes from the negative impact that these counterfeits have on consumers. There are also health and safety issues involved. For example, if a consumer decided to purchase a counterfeit PRL item instead of purchasing an authentic item that has gone through our quality assurance process and the garment has been processed with a material that could be flammable, then there is a risk of the consumer being injured. That alone causes negative impact on PRL as that product would be looked at as our product, not that of the counterfeiter who sold it.

Counterfeiting not only reduces PRL's revenues (as well as the revenues of its authorized vendors), it correspondingly impairs the Company's ability to expand and create new jobs, its jeopardizes the jobs of the Company's current employees, and it reduces the amount of sales taxes and income taxes that would otherwise be generated for federal, state and local governments. This also brings the issue of the fact that counterfeiters do not file income taxes on the sales made on the counterfeit merchandise they sell.

PRL respectfully request that the Defendant be ordered to pay PRL restitution for misappropriating the Company's trademarks and damaging its reputation and goodwill. The Company acknowledges that, at the present time, it doesn't' know precisely how much counterfeit PRL merchandise the Defendant has imported, sold, offered for sale, or otherwise profited from during the past, and that it is difficult to quantify the actual harm that the Defendant has caused the Company by selling or otherwise offering counterfeit PRL merchandise for sale. These factors, however, shouldn't' absolve the Defendant from making restitution.

Accordingly, PRL request that, in addition to any jail term, fines or other conditions that the Court may impose, the Defendant is ordered to make monetary restitution to the Company in the amount of $14,425.91. This amount is half of what the total MSRP loss would amount to. This is based on an MSRP of $39.50 and calculating it with the estimated loss of 720 units (total MSRP $28,440 (1/2 would be $14,220) and investigative fees of $205.91.)

Nothing in this letter shall be construed as a waiver or relinquishment of any right or remedy possessed by PRL or any other affected party. Specifically, PRL reserves its right to also sue the Defendant civilly.

Thank you for your consideration and attention. Please feel free to contact me should you desire to discuss this matter further.

Sincerely,

*Ellen Brooks*

Ellen Brooks
Director, US Trademark Enforcement